UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:07-cr-20052-01 |
| -vs- | JUDGE DRELL |
| LOVELESS MILSON (01) | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING AND ORDER

Before the Court is a motion for compassionate release, (Doc. 705), filed *pro se* by Defendant Loveless Milson and a motion entitled, "Motion to Amend Compassionate Release" also filed *pro se* by Milson, (Doc. 715). The Government filed oppositions to both motions, (Docs. 710, 716), and Defendant filed a reply to the Government's response to the original motion, (Doc. 711). For the reasons below, Defendant's motion for compassionate release will be **DENIED**, and Defendant's motion to amend the original filing will also be **DENIED** on procedural grounds.

I.   BACKGROUND

Defendant Loveless Milson was indicted on 25 counts arising from armed robbery, drug trafficking, and conspiracy to distribute and sell drugs. (Doc. 102). He reached an agreement with the Government and pleaded guilty to three of those counts: one charging Hobbs Act robbery under 18 U.S.C. § 1951 and the remaining counts charging firearms offenses in relation to drug trafficking and a crime of violence pursuant to 18 U.S.C. § 924(c)(1). (Doc. 251). Based on Milson's prior convictions and other information contained in the pre-sentence report, this court sentenced Defendant to a total of 39 years in prison. (Doc. 318). He is an inmate at the Federal Correctional Institution in Coleman, Florida ("FCI Coleman"), where he has served 15 years of his sentence.

1

Milson is a 44-year-old man who claims to suffer from several maladies, including asthma, hyperlipidemia (or high cholesterol), astigmatism, myopia (or nearsightedness), and an unspecified eye infection.[1] With the swell of COVID-19 diagnoses throughout the prison, Milson grew concerned for his health. On November 18, 2021, he submitted a request to FCI Coleman's warden seeking a reduction in sentence based on the extraordinary and compelling circumstances of his underlying health conditions. The warden denied Milson's request on December 5, 2021.[2] After Defendant exhausted those administrative remedies, he filed the instant motion for compassionate release with this court under 18 U.S.C. § 3582 ("Section 3582") on February 11, 2022. Milson contends that his "myriad" medical conditions make him more susceptible to contracting COVID-19 while incarcerated. (Doc. 705). His prison medical records show that as of February 28, 2022, he has received three doses of the Pfizer-BioNTech COVID-19 vaccine, (Doc. 710-1), and there has been no indication that he has ever tested positive for COVID-19, (Doc. 710).

---

[1] Defendant claims to suffer from each of these conditions, yet only one of these diagnoses—hyperlipidemia—is confirmed via the prison medical records attached to the Government's opposition to the instant motion. (Doc. 710-2). No copies of Milson's medical records were attached to his original filing or the motion to amend that filing.

[2] There is no indication in the record or Defendant's exhibits that he filed a request with the warden at FCI Coleman or that his request was denied. Failure to exhaust administrative remedies set out in 18 U.S.C. § 3582(c)(1)(A) should lead to the motion's dismissal without prejudice. See United States v. Franco, 973 F.3d 465, 467 (5th Cir. 2020). However, even if Milson failed to file a request in court with the Bureau of Prisons as prescribed by the statute, the Fifth Circuit interprets the procedure as a "nonjurisdictional, [mandatory] claim-processing rule," id. at 468, or a rule that "seek[s] to promote orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson v. Shinseki, 562 U.S. 428, 435 (2011). The Government neither raises this rule nor does it contest the subject matter jurisdiction of Milson's motion. Therefore, it does not appear that we must enforce this rule due to the Government's silence on the issue, and we accordingly accept that Milson's motion for compassionate release is properly before this court. See Pierre Paul v. Barr, 930 F.3d 684, 692 (5th Cir. 2019) (discussing a party's potential forfeiture of an objection based on a mandatory claim-processing rule if too delayed) (internal citations omitted).

## II. APPLICABLE LAW

### a. Law Governing Motions for Reduction in Sentence or Compassionate Release

Generally, courts cannot modify sentences once imposed. Freeman v. United States, 564 U.S. 522, 526 (2011); see also 18 U.S.C. § 3582(c). However, this rule is subject to some exceptions. A court may reduce a term of imprisonment upon finding "extraordinary and compelling" circumstances and consideration of the factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a) factors"). 18 U.S.C. § 3582(c)(1)(A); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021). Should a court find no "extraordinary or compelling reason[]" that warrants a reduction in sentence, the court may end its analysis there and not proceed to reviewing Section 3553(a) factors. See id.

If a court does accept the "extraordinary and compelling reasons" provided in the motion and duly examines the Section 3553(a) factors, then the defendant's sentence should be reduced in accordance with "applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(2). The policy statement that specifically references Section 3582 is United States Sentencing Guidelines § 1B1.13 ("Section 1B1.13"). It provides that "[u]pon motion of the Director of the Bureau of Prisons [("BOP") or the defendant[3]]," a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the court finds that "extraordinary and compelling reasons warrant the reduction[;] the defendant is not a danger to

---

[3] The policy statement's commentary provides that "[t]his policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law." U.S.S.G. § 1B1.13 cmt. n.4. As of 2018, the law now recognizes that either the BOP director or the defendant, subject to administrative exhaustion, may move to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A).

the safety of any other person or to the community[; and] the reduction is consistent with this policy statement."[4] U.S.S.G. § 1B1.13(1)(A), (2)-(3).

Though not binding or dispositive, Section 1B1.13's policy statement in the Sentencing Guidelines includes commentary specifying the types of medical conditions that could qualify as extraordinary and compelling reasons for sentence reduction. Thompson, 984 F.3d at 433. First, this standard is met if the defendant is "suffering from a terminal illness[, *e.g.*,] metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, defendants also qualify under this standard if he or she: (1) suffers from a serious physical or medical condition, (2) suffers from a serious functional or cognitive impairment, or (3) experiences deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The commentary also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons," including some related to the defendant's age and familial circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the commentary recognizes the possibility that BOP could identify other grounds that amount to extraordinary and compelling reasons for sentence modification. U.S.S.G. § 1B1.13, cmt. n.1(D).

Following the passage of the First Step Act of 2018, BOP's director amended its regulations and issued BOP Program Statement 5050.50. The statement sets forth, in detail, BOP's

---

[4] The policy statement also addresses reductions for defendants who are at least 70 years old and have served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c). U.S.S.G. § 1B1.13(1)(B). That provision is not applicable in this case, because Milson is only 44 years old and has served only 15 years of his sentence.

4

definition of the circumstances that may support a request for compassionate release, which is limited to the same bases the Sentencing Commission identified: serious medical conditions, advanced age, and familial circumstances. FED. BUR. OF PRISONS, PROGRAM STATEMENT 5050.50 – COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C.§§ 3582 AND 4205(g) (Jan. 17, 2019).

### b. Law Governing Second or Successive Section 2255 Motions

A defendant's sentence may be modified under 28 U.S.C. § 2255 ("Section 2255") should the defendant prove that certain errors occurred at trial or sentencing. United States v. Pontefract, No. 2:08-CR-00069-01, 2020 WL 11708142, at *1 (W.D. La. Dec. 30, 2020). Second or successive Section 2255 motions require authorization from the appropriate court of appeals before a district court may consider any evidence which could exculpate the defendant or any new constitutional jurisprudence that the movant could use to challenge his conviction or sentence. 28 U.S.C. § 2255(h); see Montgomery v. Goodwin, 841 F. App'x 700, 702 (5th Cir. 2021); see also In re Epps, 127 F.3d 364, 365 (5th Cir. 1997) (noting that the district court must also direct the Clerk of Court's office to notify the petitioner/movant that a motion for authorization must be filed with the court of appeals). Accordingly, a district court lacks jurisdiction to consider an unauthorized successive Section 2255 motion. Crone v. Cockrell, 324 F.3d 833, 836 (5th Cir. 2003).

### III. ANALYSIS

#### A. Defendant has not shown an extraordinary and compelling reason that warrants compassionate release under 18 U.S.C. § 3582.

Milson argues that extraordinary and compelling circumstances warrant consideration of a reduction in his sentence and early release, because he claims to have asthma, myopia, hyperlipidemia, astigmatism, and an unspecified eye infection. (Doc. 705). Defendant contends that these medical conditions make him vulnerable to severe illness or death should he contract

COVID-19. (Doc. 705). Nonetheless, Milson does not demonstrate or argue that his conditions individually or collectively render him extraordinarily more susceptible to severe illness or death from COVID-19 as compared to the general inmate population with the same or similar medical conditions. Thompson, 984 F.3d at 434-35.

According to the Centers for Disease Control and Prevention (the "CDC"), neither myopia, astigmatism, nor generalized eye infections, is listed as increasing the likelihood of severe illness or death from COVID-19. See CDC, COVID-19: PEOPLE WITH CERTAIN MEDICAL CONDITIONS (updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Thus, Milson's argument that the above conditions increase his chances of severe illness or death from the virus is without merit.

Milson does, however, claim to suffer from other chronic illnesses that the CDC includes among a list of conditions thought to increase a person's risk of severe illness if infected with COVID-19. As he stated with respect to his eye-related ailments, Milson contends that both his asthma and hyperlipidemia qualify as extraordinary and compelling reasons for his release in the face of the pandemic. (Doc. 705). However, we disagree. Neither of these conditions are life-threatening nor do they substantially hamper his ability to care for himself while incarcerated. See U.S.S.G. § 1B1.13, cmt. n.1(A)(i)-(ii).

The CDC reports that hyperlipidemia[5] is prevalent among 38.1% of the United States population, and by extension, among the inmate population. CDC, CHOLESTEROL (internal content source omitted) (last reviewed July 12, 2022), https://www.cdc.gov/cholesterol/index.htm. Such prevalence is not "extraordinary" but "ordinary." Thompson, 984 F.3d at 434 n.8. Thus, the mere

---

[5] Hyperlipidemia specifically refers to cholesterol levels that equal or exceed 200 milligrams per deciliter of blood. Connie W. Tsao et al., Heart Disease and Stroke Statistics—2022 Update: A Report from the American Heart Association, 145(8) Circulation e153 (2022).

existence of elevated blood cholesterol levels in a single inmate, even in the face of COVID-19, without more is not extraordinary and does not mean that the increased risk makes the condition limiting, much less "terminal." Id. at 434. Furthermore, Milson's health records show that the treating physician placed Defendant on a modified diet that limited intake of fatty and high-cholesterol foods. (Doc. 710-2). Such mitigation measures illustrate Defendant's ability to manage his cholesterol levels—at the guidance of a licensed medical professional—to prevent further deterioration in his health and increased susceptibility to severe illness induced by COVID-19.

The same analysis applies to Milson's asthmatic condition. Moreover, the CDC specifies that only individuals who suffer from "moderate to severe" asthma are more likely to get very sick from COVID-19. CDC, COVID-19: PEOPLE WITH CERTAIN MEDICAL CONDITIONS (updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Milson has not provided this court with evidence of an asthma diagnosis. Even if we accept the claim as true, he has not furnished us with evidence that a healthcare provider diagnosed his asthma as being "moderate to severe."[6] The only leg Milson stands on comes in the form of a citation to an order from the Southern District of Florida that granted an asthmatic defendant's motion for compassionate release. (Doc. 705); see United States v. Firebaugh, No. 1:16-cr-20341-UU (S.D. Fla. June 22, 2020), ECF. No. 57. However, that case differs from his situation for three reasons. First, the defendant in the referenced case suffered from a litany of

---

[6] In his reply to the Government's opposition, Milson also raised for the first time that in addition to suffering from "pulmonary asthma [sic]," he also suffers from obesity. (Doc. 711). Obesity is another condition that the CDC identifies as increasing the risk for severe illness from COVID-19, but again, Milson's assertions suffer from a lack of evidentiary support. The only medical records before this court were attached as exhibits to the Government's opposition. (Doc. 710-2). And that evidence does not reflect a diagnosis or clinical indication of obesity. This court will not substitute its own judgment for that of a licensed physician to construe Milson's claims liberally, such that we might grant his motion for compassionate release.

comorbidities that substantially increased his risk of contracting COVID-19, including asthma, chronic obstructive pulmonary disease ("COPD"), diabetes, and obesity. Firebaugh, ECF No. 57 at 1. While the Southern District of Florida did not mention the degree of the defendant's asthma, the remaining chronic illnesses taken together place that defendant in a group of people more prone to developing severe illness due to COVID-19. See id. at 4. The CDC warns that individuals with COPD, diabetes, and/or obesity are at "high risk" for severe COVID-19-related illness. CDC, COVID-19: PEOPLE WITH CERTAIN MEDICAL CONDITIONS (updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Second, that defendant sufficiently established an extraordinary and compelling reason, allowing the court to engage the second part of the analytical framework—weighing the Section 3553(a) factors in favor or against his release. The defendant in that case was a nonviolent, first-time offender who posed little danger to the community. Firebaugh, ECF No. 57 at 5-6. Third, that defendant had already served 80% of his sentence (4 out of 5 years) and would still be subject to a 15-year term of supervised release, id. at 7-8, unlike Milson who has served only 15 years of his 39-year sentence, or less than 40% of the consequence allocated by this court. (Doc. 710). While Milson potentially suffers from the same condition as did the Floridian defendant—asthma—the circumstances under the latter's compassionate release are quite distinguishable. In the absence of proof of the diagnosis and its degree of severity, this court cannot find that Milson has proven that his asthma qualifies as an extraordinary and compelling reason meriting compassionate release.

  We should also note that Milson received the Pfizer-BioNTech vaccine series, which, according to the CDC, significantly diminishes his risk of contracting COVID-19. See CDC, BENEFITS OF GETTING A COVID-19 VACCINE (updated Aug. 17, 2022) (noting that "[a]ll COVID-

19 vaccines currently available in the United States have been shown to be highly effective at preventing COVID-19"; that the approved vaccines are safe; and that getting COVID-19 vaccines are "*effective at protecting people from getting seriously ill, being hospitalized, and even dying [if infected]*") (emphasis added), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html; accord United States v. Beltran, No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) and United States v. Isidaehomen, No. 3:16-CR-0240-B-4, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021) (where our sister district courts have denied motions for compassionate release to vaccinated prisoners making similar claims, based on the Pfizer-BioNTech vaccine's effectiveness in reducing COVID-19 cases or becoming seriously ill if an inmate does become infected).[7] Additionally, the Government reviewed Milson's BOP medical records and found that on at least six different occasions, Defendant tested negative for COVID-19, and the records revealed no positive COVID-19 tests. (Doc. 710). The Government's point about Milson referring to any positive COVID-19 tests, to the extent they existed, is well taken. (Doc. 710). We find Defendant's silence on the matter indicative of (hopefully) not succumbing to COVID-19.

Since Milson failed to show an extraordinary and compelling reason for modifying his sentence, we need not consider the Section 3553(a) factors. Thompson, 984 F.3d at 433. As such, this court will **DENY** Defendant's motion for compassionate release.

---

[7] Out of an abundance of caution, we must explicitly state that we are not encouraging unvaccinated inmates with preexisting or underlying health conditions to refrain from getting vaccinated against COVID-19 in hopes that remaining unvaccinated will increase his or her chances of having a motion for compassionate release granted. When considering motions for compassionate release under Section 3582, we are still bound by the Thompson framework articulated by the Fifth Circuit. Thus, if an inmate—vaccinated fully, in part, or not at all—does not meet the criteria set out in Section 3582, this court is obligated to deny the requested relief.

### B. **Milson's motion to amend functions as a successive Section 2255 motion, and without certification by the Fifth Circuit, this court is barred from considering its claims.**

Milson has filed over a half dozen Section 2255 motions with this court. (Docs. 600, 668, 669, 670, 671, 672, 680). Most recently, on July 18, 2022, Defendant filed a motion captioned, "Motion to Amend Compassionate Release," (Doc. 715), seeking leave to amend his motion for compassionate release, (Doc. 705). Despite its title, however, the motion actually presents a different challenge to Defendant's conviction under the Supreme Court's affirming of a decision from the Fourth Circuit in United States v. Taylor, 142 S. Ct. 2015 (2022).[8] As with the previous Section 2255 filings, Milson did not seek certification from the Fifth Circuit for us to consider the motion. Therefore, we again are barred from considering the claims alleged, because they are not properly before this court. See United States v. Lawson, 83 F. App'x 619 (5th Cir. 2003) (finding that because the defendant "neither requested nor obtained the required certification from [the Fifth Circuit] to file a successive 28 U.S.C. § 2255 motion, the district court should have dismissed [the defendant's] motion for lack of jurisdiction."); see also United States v. Sellers, 247 F.3d 241 (5th

---

[8] Relevant here, the challenge raised in Defendant's "Motion to Amend Compassionate Release" first appears in his reply to the Government's opposition, albeit to a lesser degree. This court could view Milson's reply to the opposition as a successive Section 2255 motion, but we decline to do so. Such a construction could obviate Milson's right to properly raise new substantive legal challenges to his conviction or sentence, should he obtain certification from the Fifth Circuit to file a successive Section 2255 motion with this court. In light of this fact, we will dispense only the motion for compassionate release (and by extension, its reply) and permit him to continue with the claims and arguments raised in the successive Section 2255 motion that is mistitled as a request for amendment of a previous filing. See Adams v. United States, 155 F.3d 582, 584 n.1 (2d Cir. 1998) (per curiam) (observing:

> We do not suggest it would be appropriate for a later court to deem the earlier motion as one filed under § 2255 solely because the earlier court so labelled it. . . . [W]hether a motion was made under § 2255 should be determined by reference to the relief sought in the motion rather than what label the movant used. We think this would be so for labels applied by the court as well, at least where an application that is *not* a § 2255 motion is erroneously deemed to be one.

(emphasis in original)).

Cir. 2001) (also noting that without the required circuit court certification, a district court is jurisdictionally barred from considering new arguments for vacating a sentence in supplements to a motion for reconsideration); United States v. Givens, 6:07-CR-20052-03, 2020 WL 6060949 at *3 (W.D. La. Oct. 14, 2020) (finding that the court lacked jurisdiction to consider the defendant's claims that his conviction for Hobbs Act robbery was unconstitutional in light of a recent Supreme Court decision because the defendant did not seek certification from the Fifth Circuit to file a Section 2255 motion). For these reasons, we will also **DENY** Milson's successive Section 2255 motion that was erroneously captioned as a motion to amend his compassionate release motion.

Any future Section 2255 motions on Defendant's behalf will be summarily denied if he has not obtained the necessary certification in advance.

## IV.   CONCLUSION

Milson's garden variety of medical conditions put him at no greater risk of severe illness from COVID-19 compared to inmates with similar diagnoses. He is vaccinated thrice over, which suggests that his underlying conditions no longer pose as great of a threat to him becoming severely ill, hospitalized, or dying from the virus. As such, his ailments do not reflect the kinds of extraordinary or compelling reasons contemplated by the Sentencing Guidelines' policy statements or the BOP director's Program Statement, and none of Defendant's arguments inspire this court to depart from those authorities and grant him release from prison. While the virus continues to inject fear into some lives, that fear alone cannot be the basis for a court's granting of a compassionate release motion. Additionally, Defendant Milson must be careful when drafting his motions. *Pro se* litigants, fortunately, enjoy the benefit of courts reviewing their filings for function over form. This, however, cuts both ways. Any new challenges raised in contravention of

a defendant's conviction or sentence will signal to a court to construe the filing as a successive Section 2255 motion.

For the foregoing reasons, Defendant's motion for compassionate release or in the alternative, reduction in sentence, is hereby **DENIED** and the claims therein are hereby **DISMISSED WITH PREJUDICE**, and the successive Section 2255 motion fashioned as an amendment to Defendant's motion for compassionate release is hereby **DENIED** for lack of subject matter jurisdiction, but its claims are **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 3rd day of October 2022.

                                            DEE D. DRELL, SENIOR JUDGE
                                            UNITED STATES DISTRICT COURT